**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | : | |
| JEAN KERCHER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 15-6674 |
| | : | |
| READING MUHLENBERG CAREER & | : | |
| TECHNOLOGY CENTER, | : | |
| Defendant. | : | |

_____ :

Henry S. Perkin, M.J.                                                    September 6, 2017

## MEMORANDUM

Plaintiff, Jean Kercher ("Mrs. Kercher"), alleges that Defendant, Reading

Muhlenberg Career & Technology Center ("RMCTC"), violated her due process rights as well as

interfering with her rights pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C.

Section 2615, and retaliating against her for exercising her right to FMLA leave.

This matter is before the Court on the Motion for Summary Judgment filed by

Defendant Reading Muhlenberg Career & Technology Center which was filed on June 23, 2017.

Having reviewed and considered the contentions of the parties, the Court is prepared to rule on

this matter.

## I.    JURISDICTION.

The Court has jurisdiction over Mrs. Kercher's federal claims pursuant to 28

U.S.C. § 1331.

## II.    STANDARD OF REVIEW.

Pursuant to Rule 56(a), summary judgment is proper where there is no genuine issue

of material fact.  FED. R. CIV. P. 56(a).  In viewing the evidence in the light favorable to the

non-moving party, summary judgment will be granted against a party who does not make a sufficient showing to establish "an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).

The moving party carries the initial burden to inform the court of the basis for its summary judgment motion; to produce evidence to establish a prima facie case as to each element; and to identify the absence of no genuine issue of material fact. *Id.* When the non-moving party cannot establish an essential element and there is "no genuine issue as to any material fact," the moving party is entitled to summary judgment as a matter of law. *Id.* at 322.

Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Mere factual disputes will not preclude summary judgment when they are irrelevant to the outcome of the suit. *Id.* An issue is "genuine" if a reasonable trier of fact could return a favorable verdict for the non-moving party. *Mengel v. Reading Eagle Co.*, CIV.A. 11-6151, 2013 WL 1285477 (E.D. Pa. Mar. 29, 2013), *appeal dismissed* (Oct. 30, 2013)(citing *Anderson*, 477 U.S. at 248).

To defeat summary judgment, the non-moving party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(c). Moreover, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)(citing *Celotex*, 477 U.S. at 325). Where the non-moving party will have the burden of proof at trial, the moving party can make a showing that there is an "absence of evidence to support the non-moving party's case." *Jones v. Indiana Area Sch. Dist.*,

397 F. Supp.2d 628, 642 (W.D. Pa. 2005)(quoting *Celotex*, 477 U.S. at 325).

III.   **BACKGROUND**.

By Rule 16 Scheduling Order dated February 27, 2017, notice was provided to the

parties as follows:

> Upon any motion for summary judgment pursuant to Federal Rule of Civil
> Procedure 56, there shall be filed with the motion a separate, short and concise
> statement of the material facts, in numbered paragraphs, as to which the moving
> party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate,
> short and concise statement of the material facts, responding to the numbered
> paragraphs set forth in the statement required in the foregoing paragraph, as to
> which it is contended that there exists a genuine issue to be tried.
>
> Statements of material facts in support of or in opposition to a motion shall
> include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving
> party may be taken by the Court as admitted unless controverted by the opposing
> party.
>
> If at all possible, any deposition transcripts used as exhibits to these filings shall
> be submitted in an electronic format, able to be copied into WordPerfect**.**

Dkt. No. 24, n.1.  In the second footnote of the Scheduling Order, any party opposing a motion

for summary judgment was directed to also comply with the directives noted in footnote 1 of the

Scheduling Order.  *Id.*, n.2.

RMCTC filed a motion to dismiss the entirety of Mrs. Kercher's Complaint.  By

Memorandum and Order dated December 5, 2016, the motion was granted in part as to Counts I

and II of the Complaint.  In Count I, Mrs. Kercher alleged that RMCTC, her employer at the

time, discriminated against her and treated her unfavorably because of her disability. In Count II,

she alleged that she was wrongfully terminated. In Count III, Mrs. Kercher alleged that she was

discharged from her position for retaliatory reasons. In Count IV, Mrs. Kercher alleged that her discharge is a violation of the Family Medical Leave Act (hereafter "FMLA"). Lastly, in Count V, Mrs. Kercher alleged a violation of her Due Process Rights. Mrs. Kercher was granted time to amend her Complaint as to Counts I and II, but no amendment was filed.

RMCTC filed a concise statement of facts in support of its motion for summary judgment on June 23, 2017. Dkt. No. 26-8. Plaintiff's Response was filed on July 27, 2017 but in the Response to the Motion, no concise statement of facts *in opposition to* RMCTC's concise statement of facts was filed. Dkt. No. 29. Instead, in the Brief in Response to the Motion, counsel included a recitation of facts without citations to the record. Pl.'s Br., pp. 1-4. Accordingly, the factual assertions set forth by RMCTC in its Statement of Material Facts are deemed admitted. *See* Fed. R. Civ. P. 56(e)(if a party fails to address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion); *See also Binder v. PPL Servs. Corp.*, No. CIV.A. 06-2977, 2009 WL 3738569 (E.D. Pa. Nov. 5, 2009); *Higgins v. Hosp. Cent. Servs.*, No. CIV.A. 04-74, 2004 WL (E.D. Pa. Dec. 9, 2004)(Gardner, J.); *Kelvin Cryosystems, Inc. V. Lightnin*, No. CIV.A. 03-881, 2004 WL 2601121 (E.D. Pa. Nov. 15, 2004)(Gardner, J.).

Our requirement for a concise statement and a responsive concise statement is consistent with Rule 56 of the Federal Rules of Civil Procedure. In addition Rule 83(b) of the Federal Rules of Civil Procedure provides that:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local district rules unless the alleged violator has been furnished in the particular case with actual notice of the

requirement.

Thus, even if our requirement for a separate concise statement is not consistent with Rule 56, we gave Mrs. Kercher actual notice of our requirement, and she did not comply. *Binder*, 2009 WL 3738569, at *2 (citing *Kelvin Cryosystems, Inc.*).

## IV. **FACTS.**

Based upon the record papers, exhibits, depositions, and RMCTC's statement of material facts, the pertinent facts are as follows:

Mrs. Kercher was employed by the RMCTC, a vocational/technical school, as the acting Business Office Supervisor for 14 years. Kercher Dep., pp. 87, 124; Pl. Dep., Ex. 1. As the Business Office Supervisor, Mrs. Kercher was responsible for developing, recommending, and administering approved programs for receipt, custody, and disbursement of funds, and debt services; developing and implementing accounting, internal auditing and budgetary control procedures for the school. Pl. Dep., Ex. 1. Mrs. Kercher was also responsible for working with administrative personnel with respect to fiscal matters, purchasing, personnel, maintenance, data processing services, and negotiations. *Id.* Mrs. Kercher's Position Description lists the essential functions of the Business Office Supervisor position, which includes performing tasks as assigned by the Administrative Director. *Id.*

At all relevant times, Gerald Witmer (hereafter "Mr. Witmer") was the Administrative Director, Plaintiff's direct supervisor. Kercher Dep., pp. 32-33. Because Mr. Witmer believed that Plaintiff showed the Teamsters who worked in Plaintiff's office an email from Mr. Witmer that he viewed as confidential, on March 21, 2011, Plaintiff received a written reprimand. *Id.* at 41; Kercher Dep., Ex. 3. Via correspondence dated August 9, 2012, Mrs.

Kercher  was informed that she was being placed on a three-day unpaid leave of absence as a consequence of Mrs. Kercher disparaging Michael Zalegowski ("Mr. Zalegowski")[1] to the School Board Treasurer based on a union grievance and expressing vindictiveness toward Mr. Zalegowski.  Kercher Dep., Ex. 4.  Neither Zalegowski nor Keller held a grudge against Plaintiff. Kercher Dep., p. 47.

On August 15, 2012, Mrs. Kercher, via her attorney, submitted a complaint of harassment against Mr. Witmer.  Kercher Dep., Exs. 5, 7.  After a complete investigation, Mrs. Kercher's allegations were determined to be unfounded. Kercher Dep., Exs. 5, 7.

In April 2014, Plaintiff requested and was granted intermittent leave under Family Medical Leave Act ("FMLA") to address her extreme fatigue.  Kercher Dep. at 27-28; Ex. 17. Plaintiff only requested FMLA leave once.  Kercher Dep. at 66.  While Plaintiff was out on FMLA leave, she would sleep twenty to twenty-two hours per day.  *Id.* at 22.  During Plaintiff's FMLA leave, a fiscal clerk, Holly Keller, helped to manage Plaintiff's responsibilities.  Keller Dep., p. 75.

Even though Plaintiff was tasked with taking measures to avoid audit exceptions, she did not do so, resulting in three audit exceptions during the 2012-2013 fiscal year and three audit exceptions during the 2013-2014 school year.  Hearing N.T. 140; Hearing Exs. 29, 30-A, 28, 30.  Plaintiff failed to provide department heads with monthly account balances in a timely fashion, notwithstanding the fact that the deadlines were established by Plaintiff herself.  Hearing N.T. 165-70; Hearing Exs. 11, 12, 13, 18.  Per Plaintiff's own deadline, Plaintiff failed to provide

---

[1]     Mr. Zalegowski was a friend of Mr. Witmer and a direct report to Mrs. Kercher in the business office.

the Administrative Director with timely bank reconciliation statements nor did Plaintiff reconcile a single journal entry or banking statement for the 2014 fiscal year. Hearing N.T. 171; Hearing Ex. 18. Plaintiff failed to maintain a proper balance in the Public School Employees Retirement System ("PSERS") account. Hearing N.T. 177-178. Plaintiff did not comply with IRS and Pennsylvania Department of Revenue requirements for maintaining a tax exempt status. Hearing N.T. 183. Plaintiff did not maintain existing loans and grants for the RMCTC. Hearing N.T. 186. Plaintiff did not perform many of her job responsibilities in a responsible, timely, or effective manner. *See generally* Hearing N.T., Kercher Dep., Ex. 1.

Even after establishing her own deadlines, Plaintiff did not provide staff with timely financial reports in accordance with her job description. Hearing N.T. 30-36; Hearing Exs. 9-15; Kercher Dep., Ex. 1.[2] In contradiction with the directives that she was issued via memorandums dated April 1, 2014 and August 28, 2014, Plaintiff did not initiate a cross training protocol in the RMCTC business office. Hearing N.T. 71-72; Hearing Exs. 8, 22; Keller Dep. NT 75-76. Plaintiff left work early. Hearing N.T. 31.

For the second consecutive year, on June 17, 2014, Plaintiff received an unsatisfactory Administrative Performance Appraisal from the Administration. Kercher Dep. at 63-66; Kercher Dep. Exs. 8, 9; Hearing N.T. 100-105; Hearing Exs. 8, 22. At the time of the June 2014 evaluation, Mrs. Kercher averaged an absentee rate at or around twenty-five percent, due to her husband's health issues, not her own health or FMLA leave. Kercher Dep. at 67, 68.

Although Mrs. Kercher was directed to provide the Assistant Director with a

---

[2]     All references to a hearing refer to the public hearing held on March 31, 2015 and continued on June 9, 2015.

reconciliation of car show profits by July 22, 2014 and September 11, 2014, she did not do so.[3]

Hearing N.T. 151-57; Hearing Ex. 25. Mrs. Kercher did not provide the School Board with

financial reports for the months of September, October, and November 2014. Hearing N.T.

30-35. Mrs. Kercher did not file a small claims action against an adult student who failed to pay

his tuition bill, even though she was directed to do so. Hearing N.T. 162-65; Hearing Exs 26-A,

27.

On November 10, 2014, Mr. Witmer provided Mrs. Kercher with a letter notifying

her that she was suspended with pay while the RMCTC Administration investigated her

performance as the RMCTC Business Office Supervisor. Kercher Dep., Ex. 10. In a letter dated

November 10, 2014, the Administration notified Mrs. Kercher of the charges against her, based

on a list of fourteen separate acts, and that a *Loudermill* hearing was scheduled to take place on

November 19, 2014.[4] At the November 19, 2014 *Loudermill* hearing, the Administration was

represented by Attorney John M. Stott and Mrs. Kercher was represented by Attorney Stanley

Brassington, who is Mrs. Kercher's counsel in the instant action. Kercher Dep., Ex. 4 ¶7. Mrs.

Kercher was given the opportunity to respond to the fourteen allegations against her. *Id.*, Ex. 4

¶8. After the conclusion of the *Loudermill* Hearing, Mrs. Kercher was notified by letter that the

Administration would recommend her termination to the School Board and that she was

suspended without pay, effective November 24, 2015. Hearing Ex. 3. On December 2, 2014, the

School Board issued Mrs. Kercher a Notice of Right to Hearing and Statement of Charges, which

---

[3]     The car show was an event held by the Career and Technical Student Organization, which is a
student group that participates in events in and outside of the RMCTC. Hearing N.T. 151.

[4]     *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

8

was signed by the President, Secretary, and Treasurer of the Board of Directors. Kercher Dep., Ex. 12.

On March 31, 2015 and June 9, 2015, Mrs. Kercher, represented by Attorney Brassington, was afforded public hearings. Hearing N.T.; Kercher Dep., Ex. 13. At the beginning of the June 9, 2015 hearing, Mr. Brassington and Mrs. Kercher walked out of the hearing before it began. Hearing N.T. 132. On September 14, 2015, after considering the testimony and evidence presented at the two public hearings, the Board of Directors unanimously approved and authorized the termination of Mrs. Kercher's employment, effective November 10, 2014, and sustained her suspension without pay, effective November 24, 2014. Kercher Dep., Exs. 13, 14. The School Board issued a twelve-page written opinion regarding Mrs. Kercher's termination, including findings of fact and conclusions of law. Kercher Dep., Ex. 13. After hearing all of the evidence supporting Mrs. Kercher's termination, the School Board concluded that Mrs. Kercher's "conduct and actions are, individually and in the aggregate, sufficient to warrant dismissal under Section 10894 of the School Code."[5] Kercher Dep., Ex. 13 at 12.

## V. __DISCUSSION.__

### A. __Due Process Claim__

In Count V of the Complaint, Mrs. Kercher alleges that her due process rights were violated when, at the hearing on June 9, 2015, two new school board members were present who were not in attendance at her March 31, 2015 hearing. Mrs. Kercher and her counsel left the hearing after objecting and requesting a continuance of the hearing to a date and time that the

---

[5]  24 P.S. § 10-1089(c) provides the following reasons that the school board has a right to remove a school business administrator: "incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct."

same board members who were present on March 31, 2015 would be present. The request was denied and Mrs. Kercher's later request for an additional hearing with the same board members present as those that attended the March 31, 2015 hearing was also denied. Thus, Mrs. Kercher contends that she was not afforded her right to a fair, full evidentiary hearing in violation of her due process rights.

RMCTC moves for summary judgment on the basis that the requirements of due process were satisfied. RMCTC correctly notes that Pennsylvania courts have consistently held that a plaintiff is not denied due process by the absence of school board members. Def.'s Br., p. 6 (citing *Lewis v. Philadelphia Bd. Of Ed.*. 690 A.2d 814 (Pa. Commw. Ct. 1997), *Pittsburgh v. Pyle*, 390 A.2d 904 (Pa. Commw. Ct. 1978)).

Further, Mrs. Kercher's decision to abandon her termination hearing does not indicate that her due process rights were denied. Again, RMCTC correctly argues that members of boards in Pennsylvania with quasi-judicial functions can decide a case without directly having heard testimony. Def.'s Br. at 7 (citing *Foley Brothers v. Commonwealth*, 163 A.2d 80 (Pa. 1960); *Actelli v. Westmont Hilltop Sch. Dist.*, 325 A.2d 490 (Pa. Commw. Ct. 1974); *Lancaster v. Pa. State Horse Racing Commission*, 325 A.2d 648 (Pa. Commw. Ct. 1974); *Fleming v. Commonwealth Civil Service Commission*, 319 A.2d 185 (Pa. Commw. Ct. 1974)).

Mrs. Kercher also asserts that summary judgment should be avoided for lack of evidence that the RMCTC School Board reviewed the record. Pl's Br. at 9. To survive summary judgment, Mrs. Kercher must produce evidence that the RMCTC School Board did not access the record. *Board of Public Education of the School District of Pittsburgh v. Pyle*, 390 A.2d 904 (Pa. Commw. Ct. 1978)("It was not proved nor can we assume in these circumstances that the

four Board members who did not participate in the dismissal hearing did not give a 'full, impartial and unbiased consideration' to the record produced before the Board.") Mrs. Kercher has produced no evidence that the RMCTC School Board members who did not participate in the hearing did not review the record. In its Statement of Material Facts, RMCTC provided the following citations to the record:

> 39. On September 14, 2015, after considering the testimony and evidence presented at the public hearing, the Board of Directors unanimously approved and authorized that Plaintiff was terminated from employment, effective November 10, 2014, and sustained her suspension without pay, effective November 24, 2014.

> 40. The School Board issued a twelve-page written opinion, including findings of fact and conclusions of law, regarding Plaintiff's termination.

Statement of Material Facts, ¶¶ 39, 40. Neither of these citations to the record were contradicted or denied by Mrs. Kercher.

In addition, Mrs. Kercher argues that she was denied due process when the RMCTC continued her termination hearing as scheduled after she and Attorney Brassington walked out of the hearing. Pl's Br. at 8-9. There is no support in the law or the record for this assertion. To satisfy the legal requirement of due process, a municipal board must simply offer an evidentiary hearing, notwithstanding known bias. *See Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431 (M.D. Pa. 2009)(holding even where municipal board is biased, a plaintiff's rejection of due process forecloses a claim based on the denial of due process); *Stroudsburg Area Sch. Dist. v. Kelly*, 701 A.2d 1000, 1003 (Pa. Commw. Ct. 1997)(holding due process is not violated even when a majority of school board members attest that they are too biased to hear the case). Mrs. Kercher, represented by counsel, walked out of the hearing before the hearing began. Statement of Material Facts, ¶¶ 37, 38. Without citation to the record, Mrs.

Kercher argues that she was denied the opportunity to present evidence and cross-examine witnesses. Pl's Br. at 9. RMCTC correctly argues that Mrs. Kercher's refusal to accept the RMCTC's offer of due process flies in the face of her conclusory claim that she was denied the opportunity to be heard. She presents no argument or citation to contradict the RMCTC's unequivocal offer of due process.

Finally, in Mrs. Kercher's response brief to the motion to dismiss, she alleged that she did not receive proper notice of the *Loudermill* hearing signed by the appropriate officials in violation of Section 11-1127 of the School Code, making the letter regarding the hearing effectively unsigned. Pl. Supp. Br. Contra Mot. Dismiss, p. 2. Under 24 P.S. § 11-1127, a "written notice signed by the president and attested by the secretary of the board of school directors" must be provided to professional employees prior to dismissal, along with a detailed notice of the charges. On December 2, 2014, the School Board issued Plaintiff's Notice of Right to hearing and Statement of Charges, which was signed by the President, Secretary and Treasurer of the Board. Statement of Material Facts, ¶ 36 (citing Kercher Dep., Ex. 12.) On March 31, 2015 and June 9, 2015, Mrs. Kercher and her counsel were afforded public hearings, and at the beginning of the June 9, 2015, Mrs. Kercher and her counsel abandoned the hearing before it began. *Id.*, ¶¶ 37, 38 (citing Kercher Dep., Ex. 13; Hearing N.T. 132). RMCTC notes that 24 P.S. § 11-1127 does not apply to Mrs. Kercher because that provision applies to tenured employees which refers to employees holding a certificate from the Pennsylvania Department of Education. As a Business Manager, this does not apply to Mrs. Kercher, but even if it did, the December 2, 2014 letter which was signed by the President, Secretary and Treasurer of the Board complies with proper notice of the *Loudermill* hearing. RMCTC's motion with respect to Mrs.

12

Kercher's due process claim will be granted.

### B. FMLA Interference Claim

The FMLA creates two distinct causes of action: interference and retaliation. 29 U.S.C. § 2615(a)(1)-(2). Interference claims arise from violations under 29 U.S.C. § 2615(a)(1), which provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right secured by the FMLA. To assert an interference claim, the plaintiff need only show "[s]he was entitled to benefits under the FMLA and that [s]he was denied them." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). Thus, an interference claim focuses not on discrimination but on whether the employee was denied his or her FMLA rights.

To succeed on a FMLA interference claim, Plaintiff must establish that she was eligible for FMLA leave, she was entitled to FMLA leave, and she was denied benefits to which she was entitled under the FMLA. *McIntosh v. White Horse Village*, 176 F. Supp.3d 480, CIV.A. No. 15-5157, 2017 WL 1303472, at *3 (E.D. Pa. Apr. 4, 2017)(Rufe, J.)*(citing Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 334 (E.D. Pa. 2015) (citing *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014))). Other case law cites the following requirements to establish an FMLA interference claim: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 430 (W.D. Pa. 2009)(citing *Lombardo v. Air Products and Chemicals, Inc.*, No.06-1120, 2006 U.S. Dist. LEXIS 46077, 2006 WL

2547916, at *11 (E.D. Pa. July 7, 2006) (citing *Weisman v. Buckingham Twp.*, No. 04-4719,

2005 U.S. Dist. LEXIS 11696, 2005 WL 1406026, at *11 (E.D. Pa. June 14, 2005))). Mrs.

Kercher contends that RMCTC interfered with her FMLA leave by delaying her FMLA

application because she was not provided with paperwork to properly file for FMLA leave when

she requested it. Mrs. Kercher contends that she made her request for FMLA leave in March

2014 after she exhausted her sick day allotment, and Mr. Witmer delayed responding to her until

after she followed up with him on or around April 10, 2014, when he told her that she was the

first employee to request FMLA leave and he had to consult RMCTC's attorney regarding her

FMLA request. At the March 31, 2015 *Loudermill* hearing, Mr. Witmer testified as follows:

Q [Mr. Stott, RMCTC's counsel] : Do you recall that I suggested that FMLA was granted from April 1st? Do you recall that?

A: Yes. That's what that – that was the first day of her FMLA leave. Correct.

Q: Now – and that's on the same day that you gave her this other obligations to do. Is that correct, by your April 1st letter?

A: Again, I have to explain a little bit about that date. I can't answer that yes or no. I received a phone message from Mrs. Kercher - received a phone message from her on April the 10th. That message requested an FMLA leave at that time.
    I immediately emailed Mr. Stott the same day because we had never processed an FMLA leave for an employee since I've been Director to question what our policy said. What I was obligated to proceed with as it related to that policy.
    And after that conversation with him on April the 10th, I downloaded forms from the Federal government. I certified mailed those forms to her on the same day. So within one day I sent her the forms she needed to apply for an FMLA leave.
    So the answer to my question is I first became aware of it on April the 10th, and I have a document if you would want me to –

Mr. Stott: You testify to it.

Mr. Witmer: So the first time I had any proof of conversation about her request

14

was on April 10th.

Mr. Monsour [School Board counsel]: If I could interject, I would advise the Board later that this is not uncommon for FMLA to be given retroactive. People oftentimes apply for it after they learn the extent or length of the illness of a family member, themselves, a loved one, et cetera, when they realize the need arises for a lengthy time away from work, they'll ask for leave to be applied back to when they actually incurred that leave.

Mr. Witmer: And I'm not finished with my answer yet. Because that form that was sent to her when I received that form back from the doctor, the doctor signed that form on April 17th and included her notes of absence back to April 1st. So the only reason the two dates coincide is because the doctor excused her back to that date.

Mr. Brassington [Mrs. Kercher's counsel]: But you were aware from November, prior like five months before that that she was using her sick time and even vacation time because she was out a lot. Do you recall any conversation with her about her number of absences from the job beginning approximately November, six months, five months before April?

A: Our employees are entitled to a variety of different mechanisms for leave. So it was at her discretion to use those days as she desired. We did not have conversations.

Yeah, I was aware of some health issues. I was aware, but she specifically can request whatever leave she wants that she's entitled to.

Q: You wouldn't expect an employee, especially one that's been with you some years, to just will-nilly use their sick time because they want to use it otherwise than sick, would you?

A: I think your key here is I wouldn't expect that. No.

Q: So let's assume that Jean Kercher is going to get on the stand, same opportunity as you're having, to say that she spoke to you about her sickness, illness, specifically about her – she didn't know, maybe. At that time, but came to be about her car. She was allergic to her new car. And you knew she was ill during that periods of time even before April 1st. Would you agree?

A: No. Not the car. The car issue came later, that discussion.

Q: But you're aware that she had illness and sickness issues mostly between November, approximately five months before April, all the way through to April.

Would you agree with that?

A: If you ask me specifically what days, I have those days recorded that were sick.

Q: You do?

A: I'm not going to get into specifically what days, I was aware she had some medical issues. She was taking sick time, I certainly would be aware of that.

Q: The mere fact that her vacation ran out, her personal time ran out, that's when she was forced to ask for FMLA. Did she tell you that?

A: No.

Hearing N.T., pp. 85-89. Mrs. Kercher requested and was granted FMLA leave.

Mrs. Kercher also contends, without citation, that RMCTC interfered with her FMLA rights because she was given additional duties, tasks and responsibilities designed to enable RMCTC to terminate her when she could not complete the additional tasks along with her normal job duties. She contends that she had to perform these tasks while she was out on FMLA leave, citing nothing other than her own allegations for support of this contention. Such allegations, without further support, do not defeat summary judgment. *See Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO*, 982 F.2d 884, 890 (3d Cir. 1992)(quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3rd Cir.), *cert. denied*, 502 U.S. 940 (1991))(A non-moving party may not "rest upon mere allegations, general denials or . . . vague statements. . . ."). Moreover, as noted by RMCTC, Plaintiff admitted that she slept twenty to twenty-two hours per day while on FMLA leave. Statement of Material Facts, ¶ 13 (citing Kercher Dep., p. 22). Summary judgment as to Mrs. Kercher's FMLA interference claim will be granted.

## C.      Retaliatory Discharge.

In Count III of her Complaint, Mrs. Kercher claims that she suffered retaliation and was fired for exercising her right to take FMLA leave. The FMLA seeks to "entitle employees to take reasonable leave for medical reasons" while "balanc[ing] the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1)-(2). The FMLA entitles an employee to twelve work weeks of leave during any twelve month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  Following return from FMLA leave, an employee is entitled to be restored to the same or an equivalent position. 29 U.S.C. § 2614(a)(1)(A)-(B).

A discrimination or retaliation cause of action under the FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C.A. § 2615(a)(2). In order to prove FMLA retaliation, an employee must show that her employer intentionally discriminated against her for exercising an FMLA right. *Atchison v. Sears*, 666 F. Supp.2d 477, 490 (E.D. Pa. 2009). In the absence of direct evidence of FMLA-based discrimination, to establish a prima facie of FMLA retaliation, the plaintiff must show: (1) she is protected under the FMLA; (2) she suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009)(citing *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)).  Following a showing of a prima facie case, the burden shifts to the defendant pursuant to the *McDonnell Douglas* framework. *Atchison*, 666 F. Supp. 2d at 490. If the defendant can give a non-discriminatory reason for the adverse employment action, the

plaintiff is afforded the opportunity to debunk the defendant's reason and prove an inference of discrimination. *Solomon v. Sch. Dist. of Philadelphia*, 882 F. Supp.2d at 782 (E.D. Pa. 2012).

To establish a *prima facie* FMLA retaliation case, Plaintiff must establish that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."[6]  Moreover, "[t]he Third Circuit has articulated two factors relevant to the analysis of establishing the causal link between the adverse employment decision and the FMLA leave: (1) a showing that the two events were close in time or (2) evidence of ongoing antagonism toward the employee."[7]

The "sheer proximity" between FMLA leave and an adverse employment action is often enough to establish a causal connection for a *prima facie* FMLA retaliation claim. *Baltuskonis v. US Airways, Inc.*, 60 F. Supp.2d 445, 448 (E.D. Pa. 1999)(six day temporal proximity not a factor where employee proffered altered doctor's note and termination for fraudulently attempting to receive sick pay); *Voorhees v. Time Warner Cable Nat. Div.*, CIV. A. 98-1460, 1999 WL 673062 (E.D. Pa. Aug. 30, 1999) (holding "reasonable jury could infer a causal connection between Voorhees' leaves of absence and her termination from the close proximity in time [of six months] between her leave of absence and the adverse employment actions she suffered").

1.    Protection Under the FMLA

The FMLA entitles an employee to a total of twelve workweeks of leave during any twelve month period due to a "serious health condition that makes the employee unable to

---

[6]    *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).

[7]    *Capps v. Mondelez Global LLC*, 147 F. Supp. 3d 327, 336 (E.D. Pa. Nov. 24, 2015).

perform the functions of the position." 29 U.S.C.A. § 2612(a)(1)(D). Thus, taking FMLA leave is a protected activity under the FMLA. To be eligible for benefits under the FMLA, an employee must have been employed for at least twelve months by the employer from whom the leave is sought and for at least 1,250 hours of service during the previous twelve month period. *See* 29 U.S.C. § 2611(2)(A). It is uncontested that Mrs. Kercher worked the requisite number of hours to be considered eligible for benefits under the FMLA.

In providing notice to the employer that she is taking FMLA leave, the employee need not use certain magic words or mention the FMLA; "the critical question is how the information conveyed to the employer is reasonably interpreted." *De Luca v. Trustees of Univ. of Pennsylvania*, 834 F. Supp.2d 282, 290 (E.D. Pa. 2011)*(*quoting *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007). The parties do not dispute that Mrs. Kercher was protected under the FMLA nor that she gave sufficient notice that she was taking FMLA leave.

2.      Adverse Employment Action

Mrs. Kercher alleges that the adverse employment action she suffered was her termination from employment by RMCTC. Mrs. Kercher contends that RMCTC took no action against her prior to her making a harassment claim against Mr. Witmer and her later request for FMLA leave. Mrs. Kercher argues that

> [i]n her 14 years of employment, [she] only received one written reprimand and a 3-day unpaid suspension, in 2011, and 2012, respectfully. It wasn't until after Plaintiff filed a harassment complaint against Gerald Witmer and made her request for leave under FMLA that she then began to receive constant unsatisfactory performance evaluations. Plaintiff alleges that the unsatisfactory performance evaluation was done in retaliation to both the harassment claim and her leave under FMLA.

Pl.'s Br., p. 9.  RMCTC responds that Mrs. Kercher's claim is not supported by the record.  Her harassment complaint against Mr. Witmer was filed in 2012 and her FMLA leave request was made in April 2014.  Statement of Material Facts, ¶¶ 9, 11.  Mrs. Kercher's performance problems, however, date back to 2011, when she received a written reprimand for a breach of confidentiality and August of 2012, when she was suspended without pay for three days based on her inappropriate communications with the School Board Treasurer. *Id.*, ¶¶ 6, 7, 11, 12  (citing Kercher Dep., pp. 41, 27-28, 66, Kercher Dep., Exs. 3, 4, 17.)  By June 17, 2014, Mrs. Kercher had two consecutive unsatisfactory performance evaluations. *Id.*, ¶ 18.

### 3. Causal Connection

There were approximately eight months between Mrs. Kercher's request for FMLA leave and her suspension with pay to investigate her performance.  Statement of Material Facts, ¶¶ 11, 31. There was a two year and three-month time lapse between Plaintiff's August 2012 harassment complaint and her November 2014 dismissal following her suspension with pay.  *Id.*, ¶¶ 9, 31. Plaintiff accumulated two negative performance evaluations over two years after her harassment complaint in August 2012. *Id.*  RMCTC argues in its Reply Brief that the eight month lapse of time between the commencement of Mrs. Kercher's FMLA leave and her November 2014 dismissal following her suspension with pay is not unusually suggestive of retaliation.  Reply Br., p. 6 (citing *Carter v. Midway Slots & Simulcast*, 511 F. App'x 125, 130 (3d Cir. 2013)(holding eighth months insufficient to demonstrate a causal relationship between protected activity filing EEOC race discrimination complaint and adverse action)(citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) and *Aguiar v. Morgan Corp.*, 27 F. App'x 110,

112 (3d Cir. 2002)(eight month time lapse between protected activity and termination unlawful retaliation claim under Title VII, § 1981 and PHRA)).  Based on the case law applicable to this issue, Mrs. Kercher arguably does not meet the temporal proximity requirements to show a causal connection between her FMLA leave and her change in employment status.

Mrs. Kercher can rely upon "other evidence" to establish causation, such that RMCTC engaged in a pattern of ongoing antagonism in the time between her protected activity and her termination.  *Id.* at 762 (citing *Blakney v. City of Phila.*, 559 F. App'x. 183, 186 (citing *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993)).  RMCTC argues that Mrs. Kercher has not presented sufficient evidence to demonstrate a pattern of antagonism by her argument that she received negative performance appraisals and additional assignments while on FMLA leave.  Reply Br., p. 6.  RMCTC cites the non-precedential *Lackey v. Heart of Lancaster Regional Medical Ctr.*, No. 16-3986, 2017 WL 3189154 (3d Cir. Jul. 27, 2017), for support.  In *Lackey*, the Plaintiff had ongoing work performance problems and brought claims pursuant to the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA").  The Court noted that the plaintiff's performance review and subsequent written warnings both before and after her performance review in 2012 echoed the feedback she consistently received between 2006 and 2011.  *Id.* at *5.  The Court held that continued monitoring based on poor performance for one and one-half years after the protected activity and after years of repeated errors did not demonstrate a pattern of antagonism under the ADEA.  *Id.* RMCTC argues that Mrs. Kercher received her second unsatisfactory evaluation over one year after she filed a complaint against Mr. Witmer.  Following this poor evaluation, she continued the same pattern of performance problems which had been identified prior to her complaint and

FMLA leave.

Mrs. Kercher arguably makes a *prima facie* claim of FMLA retaliation through her argument that she received additional assignments and negative performance appraisals following her FMLA leave.   Under the *McDonnell Douglas* burden-shifting framework, if an employee establishes a *prima facie* case of retaliation under the FMLA, then the employer must articulate a legitimate nonretaliatory reason for the adverse employment action.  *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210 F. Supp. 3d 744, 764 (W.D. Pa. 2016), *aff'd sub nom. Caplan v. L Brands/Victoria's Secret Stores*, No. 16-4009, 2017 WL 3411813 (3d Cir. Aug. 9, 2017) (citations omitted). If the employer does so, then the burden shifts back to the employee to prove by a preponderance of the evidence that the proffered reason is a pretext for retaliation. *Id.* (citing *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014)).   The legitimate nondiscriminatory reason proffered by RMCTC is Mrs. Kercher's performance issues. Mrs. Kercher must now present evidence to show that RMCTC's performance reasons for her termination were a pretext for retaliation.   To demonstrate pretext under the *Fuentes* test,

> an employee must either: (1) offer evidence that casts sufficient doubt upon the legitimate reason proffered by the defendant so that a fact-finder could reasonably conclude that the reason was a fabrication, or (2) present evidence sufficient to support an inference that discrimination was more likely than not a motivating or determinative factor in the termination decision.

*Sawa v. RDG-GCS Joint Ventures III*, No. CV 15-6585, 2017 WL 3033996, at \*19 (E.D. Pa. July 14, 2017)(citing *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)).   Under the first prong of the *Fuentes* test, Mrs. Kercher must

> point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,'. . . and

hence infer 'that the employer did not act for [the asserted] non-[retaliatory] reasons.'" *Fuentes*, 32 F.3d at 765 (internal citations omitted). An employee "cannot simply show that the employer's decision was wrong or mistaken." *Id.* The fact that an employer made a bad decision does not make that decision retaliatory; an employer can have any reason or no reason for its employment action, so long as it is not a retaliatory reason. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995). The question at prong one of the *Fuentes* test "is not whether the employer made the best, or even a sound, business decision;" it is whether the real reason for the employment decisions is retaliation. *Keller v. ORIX Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Evidence undermining an employer's proffered legitimate reasons must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).

*Id.* Under prong two of the *Fuentes* pretext test, Mrs. Kercher must demonstrate that:

retaliation "was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. The kinds of evidence relied upon by the Court of Appeals for the Third Circuit under this prong of the Fuentes test are: 1) whether the employer previously retaliated against the plaintiff; 2) whether the employer has retaliated against other persons; and 3) whether the employer has previously treated more favorably similarly situated persons who did not engage in the protected activity at issue. *See Simpson*, 142 F.3d at 644-45.

*Caplan*, 210 F. Supp.3d at 765. Mrs. Kercher argues in her Sur-Reply Brief that:

There was never a list of essential job functions listed of Kercher's job to compare the elements of pre-FMLA and post-FMLA outlining the differences, but emphasis placed upon additional listing of jobs and duties over and above the pre-FMLA period of time when Kercher was taking many of her sick and accumulated time off for a period of six months prior to mid-March qualifies for blindness to the law and in retaliation Witmer took extra efforts to document failures of performance to a minute degree which pre-2014 was not implemented. The best time to gauge Kercher's performance was for a period of time upon return from FMLA when she recovered and was capable of performing not only the essentials of the job but the additional list of items given to Kercher by Mr. Witmer.

Sur-Reply Br., p. 4. Later in the Sur-Reply Brief, Mrs. Kercher argues that:

Plaintiff's position with the defendant was as Business Office Supervisor. The job description for plaintiff's position, at the time of her hiring, is attached

hereto as Exhibit, H.T. Loudermill 03/31/15, No 1] After plaintiff's approval for intermittent FMLA leave, Witmer sent numerous memorandums complaining of plaintiff's absenteeism. Defendant alleges that all deadlines missed by the plaintiff were set by herself; however, in these memorandums, Witmer sets deadlines and also demanding that plaintiff work set hours and work from home while not in the building. Witmer also added extra job duties including cross-training co-workers, additional reconciliations, additional reporting, various items regarding budgets, additional end of year items, along with the duties of other employees.

At the first of two formal meeting with the Reading Muhlenberg Joint School, Mr. Witmer vis-a-vie the Board Attorney Stott charged Kercher with "neglect of duty, violation of school laws, and improper conduct in the commissioner omission of 14 Acts", such language of documented as mere non-performance/failure to perform by Mr. Witmer during the entire period of the FMLA protection from mid-March 2014 and the actual FMLA application, Exhibit <u>Kercher 17</u> (although not submitted until 04/15/2014, but granted to 04/01/2014 due to Mr. Witmer's delay of getting the appropriate forms to Kercher). The FMLA was in effect from Or/01/2014 [sic] through her suspension by Mr. Witmer by letter of November 10, 2014 (Exhibit <u>Kercher 10</u>).

For the reasons stated above, Plaintiff has met her burden of proof. There are issues of material fact for a fact finder to consider. Therefore, Defendant is not entitled to Summary Judgment.

*Id.* at 7. It appears to this Court that Mrs. Kercher presents sufficient argument to submit the question to a jury whether the actions of Mr. Witmer establish a pattern of ongoing antagonism toward her in the time between her protected activity and her termination. Accordingly, summary judgment will be denied on Mrs. Kercher's retaliatory discharge claim.

## VI.     <u>CONCLUSION</u>

In viewing the facts most favorable to Mrs. Kercher as the non-movant, she fails to present any disputed issues of material fact sufficient to show that there is a genuine issue for trial with respect to her claims for violation of her due process rights and FMLA interference. Summary judgment will be granted as to those claims. Because there exist disputed issues of fact regarding Mrs. Kercher's retaliatory discharge claim, summary judgment is denied as to that claim.

An appropriate Order follows.